BLANCHE C. CRITCHER v. DEWEY CALVIN OGBURN, EXECUTOR OF THE ESTATE OF ZELMA JAMES OGBURN

No. 7610DC204

(Filed 21 July 1976)

1. **Contracts § 25; Quasi-Contracts § 2— express and implied contract plead — evidence supporting both — both submitted to jury**

    Where the complaint pleads both an express contract and an implied contract and there is evidence to support both theories, issues should be submitted to the jury as to both.

2. **Executors and Administrators § 24; Contracts § 27— services rendered decedent — express contract — sufficiency of evidence**

    In an action to recover upon an express contract evidence was sufficient to be submitted to the jury where it tended to show that plaintiff and her sister agreed that the latter would move into the home of the former, they would share expenses, the sister would pay plaintiff $50 per month rent in addition to sharing the expenses, and none of the $50 per month rent was paid by the sister prior to her death.

3. **Executors and Administrators § 24— services provided decedent — recovery upon implied contract**

    Should the jury find that there was no express contract between plaintiff and her sister relative to the latter's occupancy of the home, the evidence is sufficient to raise an inference that plaintiff provided for her sister a useful service in allowing her to occupy plaintiff's home, such service was of a character that is usually charged for, the sister availed herself of such service, and evidence was given as to the reasonable value of the service rendered and received.

APPEAL by plaintiff from *Murray, Judge.* Judgment entered 19 January 1976 in District Court, WAKE County. Heard in the Court of Appeals 9 June 1976.

This is a civil action wherein the plaintiff, Blanche C. Critcher (Blanche), seeks to recover from Dewey Calvin Ogburn, Executor of the Estate of plaintiff's deceased sister Zelma James Ogburn (Zelma), $1,700.00 upon the theory of express or implied contract.

Plaintiff's complaint is briefly summarized as follows:

In one count, plaintiff alleged that Zelma Critcher, sister of the plaintiff, resided with plaintiff in her home from 11 September 1971 until 25 July 1974 when she died. Zelma agreed with plaintiff to pay $50.00 per month as rent for living in the house but never paid anything up until her death. Plaintiff has

demanded payment from the defendant, Executor, in accordance with North Carolina law but her demands have been refused. There is justly owing to plaintiff $1,700.00 for rent.

In a second count, incorporating the above allegations, she alleged that she had rendered valuable services to Zelma in providing a home for her and that she was entitled to recover the reasonable value thereof. She alleged that the reasonable value was $50.00 per month and that $1,700.00 was justly owing to plaintiff.

The defendant filed answer denying that the Estate was indebted to plaintiff in any amount. He admitted that Zelma moved in with plaintiff on 11 September 1971, lived with plaintiff and occupied a room in her house until her death, but alleged that this occurred pursuant to an understanding between Zelma and plaintiff that they would share utility and food expenses. Defendant alleged that Zelma had fully performed under the agreement until the time of her death.

From a directed verdict in favor of defendant, plaintiff appealed.

*Johnson, Gamble and Shearon by Samuel H. Johnson for plaintiff appellant.*

*Douglass and Barham by Clyde A. Douglass II for defendant appellee.*

HEDRICK, Judge.

The evidence offered at trial tended to show the following:

Blanche Critcher owns a home where she has resided since 1963 at 518 Hilltop Avenue, Garner, North Carolina (Hilltop). On 11 September 1971 her sister, Zelma, moved from her home at Willow Springs, North Carolina, and began residing with Blanche at Hilltop. She resided with Blanche until she died on 25 July 1974. When she moved to Hilltop, she brought with her a bedroom suite, a couple of living room chairs and a color television set. Annie Tarlton, a sister of Blanche and Zelma, visited them once or twice a week at Hilltop and talked with them almost every day on the phone. She testified in part as follows:

> "I had occasion to discuss with [Zelma] her arrangement for sharing or paying or whatever she did concerning her

occupancy. Almost immediately after she moved she and I talked about it and she said they were going to split half of the utilities and groceries and half of the expenses, she called it, then she was going to pay Sister, Mrs. Critcher, a lump sum when Mrs. Critcher retired. The lump sum was for staying there for letting her use part of her house."

Blanche retired in June 1974.

Raymond Critcher, Blanche's son, who lives in Garner, testified that he had been in the insurance business, insuring homes, and had "placed true values on homes." He testified that Blanche paid $13,500.00 for the house in 1963; that improvements had been made on the home; that its fair market value from 1970 to 1974 was at least $22,000.00; and that under the circumstances where the sister shared utilities and food, where Zelma brought some of her own furniture, and where Zelma, as a sister, would occupy one bedroom in the house, the fair rental value of the room and the joint occupancy of the house was $50.00 per month. The house beside Blanche's is comparable to hers and is rented for $160.00 per month.

Joseph Jones Card, Jr., who lives in Maryland, is a brother of Blanche and Zelma. He has been a long distance truck driver for eighteen years and has had occasion to keep in close contact with Blanche and Zelma. He testified in part as follows:

"I would usually call them twice every month and would see them almost twice a month. I would call my sister, Mrs. Zelma Ogburn, when she lived on the farm, and I would go by and see my sister, Mrs. Blanche Critcher, and then when Zelma moved in with Blanche, I would see them both at the same place, at Hilltop Avenue in Garner. My sister, Blanche Critcher, owns that home, and Mrs. Ogburn moved in with Mrs. Critcher approximately September of 1971. I saw Mrs. Ogburn the week before she moved and I saw them again on Thanksgiving weekend with the whole family. Since 1971, I have seen Mrs. Critcher and Mrs. Ogburn once or twice a month, and I know that Mrs. Ogburn resided at Blanche Critcher's house after September 1971. Mrs. Ogburn visited with me frequently, at least two or three times a year, and would stay sometimes a week, and sometimes more than that, at my home near Baltimore. I had occasion to inquire as to the financial relationship or the sharing relationship and matters of expenses at the

Critcher house, and while sitting around the table drinking coffee with Zelma, I asked her what kind of deal she worked out with Blanche, and she told me. Zelma Ogburn told me she'd pay half of the utilities and $50.00 per month. I had discussions from time to time with Mrs. Ogburn and she told me that the $50.00 per month was for room rent and sharing the house. The arrangement for food was to split the cost. I discussed with Mrs. Ogburn the circumstances as to how she was to pay the rent and she told me that she would pay a little now and then, whenever Blanche needed it, until she retired, and when she retired she would straighten up with her and they would do things together. I had a lot of conversations with my sister, Blanche [Zelma], and the last conversation with her was when she was in the hospital, and as of that time I do not know if she had paid any of the rent. I don't think we discussed that thoroughly. The last time I discussed the rent with my sister was the previous summer ·when we were on vacation together. As of that time she said she had not paid any of it. She said that as of that time· Blanche didn't need it and didn't want it. I am referring to the summer of 1973. She indicated she expected to pay Blanche, and she was very serious about it. It is .my understanding that they had entered into this type of agreement with each other."

[1] "Where the complaint pleads both an express contract and an implied contract and there is evidence to support both theories, issues should be submitted to the jury as to both." *Helicopter Corp. v. Realty Co.*, 263 N.C. 139, 148, 139 S.E. 2d 362, 369 (1964).

"In the absence of anything to indicate a contrary intention of the parties, where one performs for another a useful service of a character that is usually charged for and such service is rendered with knowledge and approval of the recipient, who either expresses no dissent or avails himself of the service rendered, the law raises an implied promise on the part of the recipient to pay the reasonable value of such service. The general rule is that where services are rendered by one person for another, and are knowingly and voluntarily accepted, without more, the law presumes that such services were given and received in the expectation of being paid for, and implies a promise to pay

their reasonable worth." 66 Am. Jur. 2d, Restitution and Implied Contracts, § 24, p. 968.

*See Freight Carriers v. Allen Co.*, 22 N.C. App. 442, 206 S.E. 2d 750 (1974).

[2]   The complaint in the present case pleads both an express and an implied contract; and in our opinion, the evidence, when considered in the light most favorable to the plaintiff, supports both theories. The evidence will permit, but not compel, the jury to find that Blanche and Zelma agreed that the latter would move into the home of the former and they would share expenses and that Zelma would pay Blanche $50.00 per month rent in addition to sharing the expenses. The evidence will support a finding by the jury that none of the $50.00 per month rent was paid by Zelma prior to her death. Indeed, there is no suggestion in defendant's answer or in the evidence that any rent was paid by Zelma. Payment is an affirmative defense which must be pled, G.S. 1A-1, Rule 8(c), and " 'the general rule is that the burden of showing payment must be assumed by the party interposing it.' (Citations omitted.)" *Finance Co. v. McDonald*, 249 N.C. 72, 105 S.E. 2d 193 (1958). Defendant's entire contention seems to be that there was no agreement, either express or implied, that Zelma would pay Blanche for her occupancy of the home.

[3]   If the jury should find that there was no express contract between Blanche and Zelma relative to the latter's occupancy of the home, the evidence, when considered in the light most favorable to plaintiff, is sufficient to raise an inference that Blanche provided for Zelma a useful service in allowing her sister to occupy her home; that such service was of a character that is usually charged for; and that Zelma availed herself of such service. Likewise, the evidence is sufficient to raise inferences as to the reasonable value of the service rendered and received.

Since there must be a new trial, it is not necessary that we discuss other questions raised in appellant's brief. The judgment directing a verdict for defendant is reversed and the cause is remanded to the district court for a new trial.

Reversed and remanded.

Judges PARKER and ARNOLD concur.